IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action |
| v. | ) | |
| | ) | 10-10043-02-JTM |
| CHRISTINA CHILDS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## UNITED STATES' RESPONSE TO DEFENDANT
## CHRISTINA CHILDS' MOTION TO SUPPRESS EVIDENCE (Doc. 36)

Comes now the United States of America, by and through its attorney Debra L. Barnett, Assistant United States Attorney for the District of Kansas, and responds to the defendant's Motion to Suppress Evidence (Doc. 36) as follows:

### Issue Raised

The defendant, Christina Childs, asks this court for an order suppressing all physical evidence obtained from 1001 W. Marlboro and 3214 S. Water, both in Wichita, Kansas. The defendant further requests that the court suppress any statements she made to law enforcement officers in response to questioning during and after the search of 1001 W. Marlboro.

### Relevant Facts

At approximately 10:44 p.m. on August 12, 2009, Wichita Police Department (WPD) officers heard shots fired in the area of 30th and McLean Streets in Wichita, Kansas. Soon thereafter, dispatch advised officers of a possible shooting at 1001 W. Marlboro in Wichita,

Kansas.   A "calling party" reported to dispatch that an unidentified person shot her "husband."

WPD Officers Christopher Welsh and Aaron Gillispie proceeded to the area along with other officers.  As they approached the house, with guns drawn, officers noticed shell casings on the ground.  Glass in the front door was broken out.  The door's exterior frame had holes in it, consistent in appearance with gunshot damage.

Off. Welsh asked dispatch if the calling party was still on the phone.  Dispatch responded affirmatively.  Off. Welsh then loudly announced that he was with the Wichita Police Department.  He asked for the calling party to come to the door.

A woman, later identified as the defendant Christina Childs, opened the broken front door.  Her clothing was blood soaked.

Offs. Welsh and Gillispie entered the house, with guns still drawn, announcing that they were with the Wichita Police Department.  The officers saw a man laying in the middle of the living room floor.  He was wearing a shirt soaked in blood with a hole above his heart.  He had a bullet wound on his face.  The man, later identified as Jeffrey Childs, told the officers that he was shot in the heart and that he was losing consciousness.  Lt. Jeff Pike spoke to Jeffrey Childs encouraging him to breath deeply and continue to talk until the medics arrived.

Off. Welsh looked around the living room area.  He noticed blood spatter throughout.  Meanwhile, Off. Jesston Seachris questioned the defendant about the shooting.  She stated that she was in the back bedroom when Mr. Childs put their dogs up and headed back to the

2

living room.  The defendant stated that she went toward the living room when she heard Mr. Childs arguing in the foyer area.  As the defendant moved toward the inner door connected to the foyer she noticed that Mr. Childs was holding the outer door closed.  She then heard three or four gunshots coming from outside.  Mr. Childs was hit by a bullet.  The defendant put Mr. Childs on the floor then called 911.  She stated that she did not see anybody outside.

Due to the blood on the defendant's shirt, Off. Seachris asked her several times if she was shot or injured.  The defendant responded negatively.  Off. Seachris eventually asked the defendant to sign a waiver to search and process the house.  The defendant verbally agreed.

In the meantime, Off. Welsh noticed a blood trail that led to a bedroom on the northeast part of the house.  Off. Welsh asked defendant Childs if anyone else was in the house.  She said "no, you can't go back in that room and search my house."  The defendant also stated that she wanted to go back into the room and secure some "valuables." Off. Welsh told the defendant that due to the blood trail leading back into another area of the house he was going to search for other injured people.  The defendant became very combative and told the officers that they had no right to search her house.  Off. Welsh disagreed.

The defendant eventually admitted that there were two people in the back bedroom, just as Off. Welsh noticed a partition leading to the back bedroom.  He then saw a young woman, eventually followed by a young man, come out of this room.  The defendant stated that these were her friends and that they had just arrived after the incident occurred.

At this point, Offs. Welsh and Gillispie headed towards the back bedroom to look for

3

other injured people.  As they walked to the bedroom Off. Welsh noticed a desk in the hallway.  On the desk, in plain view, was marijuana.  As the officers went into the back bedroom, with guns drawn, they noticed several containers in plain view with marijuana inside.  In addition, they smelled the distinct aroma of fresh or raw marijuana.  The officers cleared the room and left it.  They did not seize any drugs seen in plain view.

Off. Welsh went back into the front room of the house and instructed officers to place defendant Childs and the two other individuals under arrest.  Defendant Childs yelled that the officers had no right to be in the bedroom.  Off. Welsh responded that due to the blood trail leading back to the bedroom he was obligated to check the residence.  He further advised her that she was under arrest for the items he observed in plain view.  At that point, defendant Childs told the officers that she had been shot.  She stated that she did not realize this initially.  Off. Gillispie conducted a basic visual examination of defendant Childs, with her consent, and found that she had two bullet wounds.  EMS was summoned to the residence again (they had already left to take Mr. Childs to the hospital).

Based upon the aroma of raw or fresh marijuana and the drugs seen in plain view in the bedroom and hallway, the officers secured the residence in order to obtain a state search warrant.  After receipt of the search warrant, it was executed at 1001 W. Marlboro.  Based upon evidence found in this residence and the statements of the two young people in the house, a federal search warrant was obtained for the residence/business located at 3214 S. Water in Wichita, Kansas.

Drugs and drug packaging materials were found at both locations.  In addition, at the

3214 S. Water location, officers found welded metal containers placed in car tires with drugs packed inside.  These containers were in the process of being unpacked.

Meanwhile, on August 13, 2009, at approximately 12:55 p.m. Off. Robert Reichenberger contacted the defendant at Via Christi Hospital in the Surgical Intensive Care Unit, Room #9.  Off. Reichenberger began by completing a Personal History Form with the defendant.

Off. Reichenberger then asked what happened with regard to the shooting.  The defendant gave the officer a detailed statement about the incident.  After this, the officer asked the defendant if there was anything else she could tell him about the shooting.  She responded negatively.

Off. Reichenberger then relayed the information from this interview to DEA TFOs/Dets. Lance Oldridge and Kevin Real who contacted the defendant and interviewed her beginning at approximately 1:30 p.m.  TFO Oldridge explained to the defendant who they were and that they wanted to speak with her about the shooting incident and the large amount of drugs found in the house.  TFO Oldridge further explained that she was not under arrest, that she was not going to be arrested and she would be able to leave the hospital when she was discharged.

The defendant then told the officers about the events leading up to the shooting.  According to the information the defendant provided, the shooting may have been related to a previous robbery.  The defendant admitted that her husband sold marijuana, cocaine and methamphetamine.  She stated that he kept the drugs in his room and did not share the money

5

he made with her.  She further admitted that he has been a drug dealer for as long as she has known him – about 13 years.  The defendant stated that Mr. Childs sold cocaine and marijuana.  During the previous year he started selling methamphetamine.  She recently saw "ice" in a zip lock bag in his room.  When asked how often Mr. Childs re-supplied himself with drugs, the defendant said about every two months.  The defendant admitted that she would notice the amount of drugs diminishing and then there would be more.  When asked about the last time Mr. Childs "re-upped," she said it was within the last week.  The defendant noticed about two to three kilograms of cocaine and one pound of methamphetamine along with a substantial amount of marijuana.

This interview concluded at approximately 2:00 p.m. because the hospital was ready to release the defendant.  The defendant was released.  She was not arrested.

## Argument and Analysis

A.   Warrantless Entry Into House Did Not Violate Fourth Amendment

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const., amend. IV.  The Fourth Amendment protects individuals from unreasonable searches and seizures by the government.  See United States v. Place, 462 U.S. 696, 700 (1983).  Warrantless searches and seizures inside a house are presumptively unreasonable.  Groh v. Ramirez, 540 U.S. 551, 559 (2004).  However, there are exceptions to this warrant requirement.  Katz v. United

States, 389 U.S. 347, 357 (1967); Johnson v. United States, 333 U.S. 10, 14-15 (1948).

One such exception occurs when there are "exigent circumstances" posing a significant risk to the safety of a police officer or a third party. United States v. Najar, 451 F.3d 710, 717 (10th Cir. 2006).   See Mincey v. Arizona, 437 U.S. 385 (1978). See also United States v. Thomas, 372 F.3d 1173, 1177 (10th Cir. 2004)(warrantless entry into residence to search for anyone who may have been injured); United States v. Flowers, 336 F.3d 1222, 1231 (10th Cir. 2003)(remanded for determination by district court as to whether officers reasonably believed a threat existed as to their safety); United States v. Rhiger, 315 F.3d 1283, 1288-90 (10th Cir. 2003)(reasonable belief that officer and public safety were threatened); United States v. Gay, 240 F.3d 1222, 1228-29 (10th Cir. 2001)(threat to officers' physical safety justified failure to knock and announce); United States v. King, 222 F.3d 1280, 1285 (10th Cir. 2000)(exigency existed due to officers' knowledge of circumstances combined with defendant's history of violence); United States v. Wicks, 995 F.2d 964, 970-71 (10th Cir. 1993)(numerous factors, including safety, created exigent circumstances); United States v. Smith, 797 F.2d 836, 841 (10th Cir. 1986)(totality of circumstances demonstrated exigency relating to officer safety).

"Exigent circumstances" exist when (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable. Najar, 451 F.3d at 718. The court must determine whether the officers "were confronted with reasonable grounds to believe there was an immediate need 'guided by the realities of the situation presented by the

record' from the viewpoint of 'prudent, cautious, and trained officers.'" <u>Najar</u>, 451 F.3d at 718-19 (quoting <u>United States v. Anderson</u>, 154 F.3d 1225, 1233 (10th Cir. 1998)). "The inquiry determining the existence of an exigency is essentially one of reasonable belief." <u>Najar</u>, 451 F.3d at 719.

"Reasonable belief does not require absolute certainty; the standard is more lenient than the probable cause standard." <u>United States v. Porter</u>, 594 F.3d 1251, 1258 (10th Cir. 2010). "'Officers do not need ironclad proof of "a likely serious, life-threatening" injury to invoke the emergency aid exception.'" <u>Id</u>. (quoting <u>Michigan v. Fisher</u>, 130 S.Ct. 546 (2009)).

In this particular case, the United States will present the testimony of officers to demonstrate that the officers reasonably believed based pm totality of the circumstances that there was an immediate need justifying their entry into the Childs' home for the purpose of providing emergency aid.  The initial search in the area of the living room was reasonable based upon finding that there had been a shooting, and at least one person was injured. When the officers found a trail of blood into another room, and the presence of other people who did not immediately disclose their presence to the officers, exigent circumstances continued to exist requiring that the officers follow the trail of blood to determine (1) if there was anyone else in the house, (2) whether such person was injured, and/or (3) whether this person posed a safety risk to the Childs and/or the officers.  All of the circumstances combined, gave the officers reasonable grounds to believe there was an immediate need to investigate the officers' legitimate concerns for the life and/or safety of another, the Childs

8

and themselves.   In addition, the officers ensuing actions were reasonable under the circumstances.   The officers actions took them into the adjacent hallway and room where they saw drugs and drug packaging materials in plain view.  The officers' observations were not the product of a search for evidence but the result of a desire to ensure that no one else in the house was injured or would pose a risk to the people in the house, including the officers.   The officers' legitimate basis for the search into the back area of the house is further demonstrated by the fact that they did not immediately seize any of the drugs as evidence, even though such action would have authorized by the plain view exception to the warrant requirement.   See Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971); United States v. Hatfield, 333 F.3d 1189, 1194-95 (10th Cir. 2003).   Consequently, the entry and subsequent (limited) search of the defendant's home was objectively reasonable.   The officers' presence in the home and subsequent search did no violate the Fourth Amendment.

B.     Defendant's Statements at House and Hospital

In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the Supreme Court held that the prosecution may not use a defendant's statements produced by a custodial interrogation unless the defendant was warned about his privilege against self-incrimination and voluntarily waived that right.  The Miranda warning was "designed to protect a defendant's Fifth Amendment privilege...during 'custodial interrogation.'" United States v. Rodriguez-Garcia, 983 F.2d 1563, 1568 (10th Cir. 1993).   Consequently, the Miranda warning is required only if the suspect is in a custodial situation and is undergoing interrogation.  United States v. Perdue, 8 F.3d 1455, 1463 (10th Cir. 1993).

A person is in custody for the purposes of <u>Miranda</u> if he has been deprived of his freedom of action in any significant way, or his freedom of action has been curtailed to a degree associated with a formal arrest. <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983); <u>Miranda</u>, 384 U.S. at 444. "A person has been taken into police custody whenever he 'has been deprived of his freedom of action in any significant way.'" <u>Perdue</u>, 8 F.3d at 1463(quoting <u>Miranda</u>, 384 U.S. at 444). "If, from an objective viewpoint, someone in [defendant's] position would reasonably believe [his] freedom of action had been curtailed to a 'degree associated with a formal arrest,' then [he] would be held in custody during the interrogation." <u>United States v. Benally</u>, 146 F.3d 1232, 1239 (10th Cir. 1998)(quoting <u>United States v. Griffin</u>, 7 F.3d 1512, 1518 (10th Cir. 1993)). <u>See also</u> <u>United States v. Robertson</u>, 19 F.3d 1318, 1321 (10th Cir. 1994). Stated differently, whether a person is in custody depends on the objective circumstances of the interview, not the "subjective views harbored by either the interrogating officers or the person being questioned." <u>Stansbury v. California</u>, 511 U.S. 318, 323 (1994)(per curiam). This objective test is designed to provide guidance to law enforcement officers and does not require consideration of the individual defendant's characteristics. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 667-69 (2004).

A person's statements to law enforcement must also be made voluntarily. <u>Benally</u>, 146 F.3d at 1239. Whether a confession is the product of a free will depends on several factors: the age, education, and intelligence of the defendant; the length of detention and questioning; whether the defendant was advised of his/her rights; the defendant's physical and mental characteristics; the location of the questioning; and whether the defendant was

subjected to physical punishment.  Id.  The mere fact that a person has taken drugs prior to giving a statement does not render it inadmissible.  The evidence must demonstrate that the defendant was so affected as to make his statement unreliable or involuntary.  United States v. Taylor, 508 F.2d 761 (10th Cir. 1975).  This determination is based on the totality of the circumstances.  Benally, 146 F.3d at 1239.  Finally, a defendant's ignorance of the full consequences of his decisions never vitiates their voluntariness.  Oregon v. Elstad, 470 U.S. 298, 316 (1985).

The United States will present evidence demonstrating that the defendant freely and voluntarily submitted to a noncustodial interview by law enforcement officers.  The evidence will prove that the defendant's statements were not the product of an impaired mental capacity or duress.

Wherefore, at the conclusion of the hearing, the United States will request that the defendant's Motion to Suppress Evidence be denied.

s/ Debra L. Barnett
DEBRA L. BARNETT
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, Kansas 67202
316-269-6481
K.S.Ct.No. 12729

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2010, I presented the foregoing to the clerk of the court for filing and uploading to the CM/ECF system which will send a notice of electronic filing to Mr. Carl Maughan.

<u>s/ Debra L. Barnett</u>
DEBRA L. BARNETT
Assistant U.S. Attorney